929 F.2d 633
 19 Fed.R.Serv.3d 612
 MANOR HEALTHCARE CORP., Plaintiff-Appellant,
v.
John LOMELO, Jr., et al., Defendants,
City of Sunrise, Defendant-Appellee.
MANOR HEALTHCARE CORP., A Delaware Corporation, Plaintiff-Appellant,
v.
John LOMELO, Jr., John Montgomery, Defendants,
City of Sunrise, Defendant-Appellee.
 Nos. 89-6203, 90-5459.
 United States Court of Appeals,
Eleventh Circuit.
 April 25, 1991.
 
 Arthur Wolff, Fort Lauderdale, Fla., Philip J. Montante, Jr., Pompano Beach, Fla., for plaintiff-appellant.
 Stuart R. Michelson, N. Miami, Fla., Edward Shuster, Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, Fort Lauderdale, Fla., for defendant-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this appeal, we affirm the district court's rulings (1) that a municipality is not necessarily liable, in a 42 U.S.C. Sec. 1983 lawsuit, for a city official's criminal activities, although the activities are related to the city official's area of responsibility, and (2) that a prevailing party, under Federal Rule of Civil Procedure 54(d), may recover costs, although the costs were paid by a non-party.
 
 FACTS
 
 2
 Manor Health Care (Manor) is a Delaware corporation engaged in the business of building and operating nursing homes throughout the United States. In December, 1982, Manor submitted an application to the city of Sunrise, Florida, seeking a special exemption to the zoning laws to build a nursing home within the city. The Sunrise City Council initially scheduled a reading of Manor's request in January, 1983; however, the council postponed the reading due to community protests and petitions opposing the zoning application. Pursuant to the City of Sunrise Code, the proposed ordinance containing Manor's zoning change had to be read on at least two separate days at regular or special meetings prior to its enactment. See City of Sunrise, Florida, Code, Sec. 3.12(2) (1972). The city council held this first meeting regarding Manor's request in April, 1983, and listened to protests from several residents of the community. In May, 1983, the council held the second reading amid protests from residents, and approved the ordinance by a three-to-two vote.
 
 
 3
 Following the council's approval, John Lomelo, Jr., Mayor of Sunrise, vetoed the ordinance citing opposition from abutting property owners and residents. Although the City Code provides that the city council may override a mayoral veto by a four-fifths vote of the city council, Manor did not seek such an override. Instead, Manor located a new site within the city and submitted a second application for zoning change. The city council unanimously approved the new site.
 
 
 4
 In accordance with the city charter, Manor's next step was to present the ordinance to the Planning and Zoning Commission. In June, 1983, prior to the ordinance's presentation to the zoning commission, Marvin Liebowitz, a registered lobbyist, told Manor's lawyer that for $50,000 Liebowitz would help Manor gain approval for its nursing home. Manor's lawyer responded that $50,000 was "ridiculous," but agreed to meet with Liebowitz and Mayor Lomelo. During the meeting, Lomelo reduced the $50,000 sum to $30,000. After expressing displeasure with the $30,000 fee, Manor's senior vice president, Steven Silver, proceeding under Federal Bureau of Investigation (FBI) directives, agreed to hire Liebowitz for $30,000.
 
 
 5
 On September 27, 1983, the City of Sunrise Planning and Zoning Commission unanimously approved the ordinance, and the city council granted the rezoning application on a five-to-zero vote. On September 29, 1983, Mayor Lomelo signed the ordinance.
 
 
 6
 Thereafter, Silver participated in an FBI investigation during which he taped several telephone calls and conversations with Mayor Lomelo and Liebowitz. Lomelo was later convicted of eight counts of mail fraud, conspiracy to commit mail fraud, and conspiracy to obstruct interstate commerce by extortion, not all of which are directly related to Manor. See United States v. Lomelo, 792 F.2d 1124 (June 6, 1986) (unpublished opinion).
 
 PROCEDURAL HISTORY
 
 7
 In July, 1988, Manor filed this lawsuit against Lomelo and the city of Sunrise under 42 U.S.C. Sec. 1983 for deprivation of constitutional rights under the color of state law. The complaint alleged that Lomelo and John Montgomery, president of the Sunrise City Council, extorted $30,000 from Manor while acting on behalf of the city of Sunrise. The district court referred the case to a magistrate judge who recommended summary judgment in favor of the city of Sunrise. The district court adopted the magistrate judge's recommendation and granted the city of Sunrise's motion for summary judgment. Following the grant of summary judgment, the city filed a motion to tax costs. The district court awarded the city $2,339.39 in costs. Manor appeals the summary judgment ruling in case number 89-6203 and the cost award in case number 90-5459. This court consolidated the appeals.
 
 ISSUES
 
 8
 Manor raises two issues on appeal: (1) whether the district court erred in granting the city of Sunrise's motion for summary judgment; and (2) whether the district court erred in awarding the city costs.
 
 CONTENTIONS
 
 9
 Manor contends that the city of Sunrise should be held liable for Lomelo's actions because the city's charter and the de facto powers allotted to Lomelo made him the final policy-making authority with regard to the building and day-to-day operation of Manor's proposed nursing home. Additionally, Manor contends that the district court erred in awarding the city of Sunrise costs because the city's insurance carrier, Florida Insurance Guaranty Fund (FIGA), paid the cost of the litigation.
 
 
 10
 In response, the city contends that its charter did not give Lomelo final policy-making authority with regard to zoning, and it cannot be held liable based on the doctrine of respondeat superior in a section 1983 action for Lomelo's criminal activities. Furthermore, the city of Sunrise contends that as the prevailing party, it was entitled to costs.
 
 DISCUSSION
 A. Municipal Liability
 
 11
 In reviewing the district court's grant of a motion for summary judgment, we apply the same legal standards applied by the district court. Clemons v. Dougherty County, Georgia, 684 F.2d 1365 (11th Cir.1982). Federal Rule of Civil Procedure 56(c) permits a summary judgment when the pleadings along with appropriate affidavits establish "no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although all justifiable inferences are to be drawn in favor of the nonmoving party, the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case. Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir.1987).
 
 
 12
 Manor contends that the district court erred in concluding that Lomelo was not the final policy-making authority for the city of Sunrise. According to Manor, Lomelo was the chief executive and administrative officer of the city, and the city charter "clothed" him with final policy-making authority with respect to zoning. Manor further argues that Sunrise City Charter Sec. 4.043(b) authorized Lomelo to direct and supervise the administration of "all departments, offices and agencies of the city," including the building and zoning department, public works, electrical inspectors, and plumbing inspectors. Furthermore, Manor argues that Lomelo had veto power over legislative ordinances and resolutions, including those from the zoning department. Accordingly, Manor contends that the scope and nature of Lomelo's authority, conferred upon him by the city charter, and his de facto powers, accumulated over eighteen years of continuous leadership as mayor of the city, made him in essence the alter ego of the city.
 
 
 13
 The district court found that the city charter did not give the mayor the legal authority to commit extortion or to promulgate an official policy or custom which binds the municipality for any acts of extortion its officials may commit in their individual capacities. Relying on Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the district court reasoned that Manor failed to show that Lomelo was acting in his official capacity as a policy maker or that he established a municipal policy with respect to extortion. Therefore, the district court concluded that Manor failed to show an essential element of its case: that Lomelo acted as a final policy-making authority when he attempted to extort a bribe from Manor.
 
 
 14
 Section 1983 provides for the imposition of liability upon any person who, acting under color of state law, deprives another of rights or privileges secured by the Constitution or laws of the United States. 42 U.S.C. Sec. 1983. Although municipalities are considered "persons" within the meaning of section 1983, the constitutional deprivation must have its origin in what can fairly be said to be a policy of a municipality. Monell v. City of New York Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Nonetheless, municipalities cannot be held liable on a theory of respondeat superior. Monell, 436 U.S. at 691, 98 S.Ct. at 2036. See also Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).
 
 
 15
 In Pembaur, the Court articulated the following three-part test for determining when a single act of a municipal officer subjects the municipality to liability under section 1983: (1) acts which the municipality officially sanctioned or ordered; (2) acts of municipal officers with final policy-making authority as defined by state law; and (3) actions taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area. Pembaur, 475 U.S. at 480-83 & n. 12, 106 S.Ct. at 1298-1300 & n. 12. The Court also clarified the fact that a municipality is not liable merely because the official who inflicted that constitutional injury had the final authority to act on its behalf. Thus the Court stated:
 
 
 16
 [W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to section 1983 liability. Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official--even a policy making official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. See, e.g., Oklahoma City v. Tuttle, 471 U.S. at 822-24, 105 S.Ct. [2427] at 2435-2436 [85 L.Ed.2d 791 (1985) ]. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.
 
 
 17
 Pembaur, 475 U.S. at 481-82, 106 S.Ct. at 1299-1300. See also City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Jett v. Dallas Independent School Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).
 
 
 18
 According to Manor, the city charter established a "strong mayor" type government and using these powers, Lomelo caused Manor to pay Liebowitz $30,000 to lobby and secure a special zoning exception for its nursing home. Thus, Manor contends that the powers given Lomelo under the city charter are just those powers the Supreme Court envisioned when it considered whether an official had final policy-making authority with respect to municipal liability in Pembaur.
 
 
 19
 Manor's analysis asks us to broadly construe municipal liability to include all acts of a municipal officer allegedly clothed with the ultimate power and responsibility for that municipality. We decline the offer. The teachings of Monell and its progeny specifically prohibit us from holding a municipality liable for all acts of a municipal officer. Indeed, the Sunrise city charter granted Lomelo the power to oversee and administer all departments and agencies of the city, including the planning and zoning department. The charter further gave the city council the power to override Lomelo's veto with regard to zoning matters. Thus, under the charter, Lomelo was not the ultimate policy-making authority regarding zoning issues in the city of Sunrise. See City of St. Louis v. Praprotnik, 485 U.S. at 125, 108 S.Ct. at 924 (official's actions subject to review procedures do not amount to complete delegation of authority).
 
 
 20
 Although acknowledging that the city council could override Lomelo's veto by a four-fifths vote, Manor nonetheless argues that Lomelo's de facto powers caused the city council to defer in substantial part to his judgment. Thus, he was the final policy maker with regard to zoning. See Berdin v. Duggan, 701 F.2d 909, 914 (11th Cir.1983); see also Bowen v. Watkins, 669 F.2d 979, 989-90 (5th Cir.1982). Additionally, Manor argues that Lomelo and Sunrise were one and the same. Therefore, Manor concludes that Lomelo's policy of economic duress and monetary aggrandizement for his friends, such as Liebowitz, was characteristic during Lomelo's eighteen-year policy of administering the city of Sunrise with an iron hand.
 
 
 21
 We note that following Lomelo's veto of Manor's first zoning ordinance, Manor failed to seek an override of this veto from the city council. The Sunrise city charter, which authorizes a mayor-council form of government, does not permit the mayor alone to determine the policy of the city. Only the city council can make such determinations. Consequently, Manor cannot now contend that the city council would have deferred to Lomelo's judgment on all zoning issues since Manor failed to trigger the city council's authority.
 
 
 22
 We further note the decisions from two other circuits which support our holding. In Worsham v. City of Pasadena, 881 F.2d 1336 (5th Cir.1989), the court held that the mayor's action of indefinitely suspending city employees was not the act of the city because the city council was empowered to review the decision of city officials. Worsham, 881 F.2d at 1341. The Worsham court further reasoned that the language in Pembaur and Praprotnik is significant in two respects:
 
 
 23
 First, it indicates that policy-making authority in areas other than the one implicated is not sufficient to impose liability on the city. Pembaur established that no matter how much power an official has, no municipal liability exists if that official does not set the policy at issue. Second, the language indicates that the employee must have final policy-making authority in that area.
 
 
 24
 Worsham, 881 F.2d at 1340. Additionally, the Eighth Circuit in Williams v. Butler, 863 F.2d 1398 (8th Cir.1988) has also stated that an incomplete delegation of authority, i.e., where the right of review is retained, will not result in municipal liability. Butler, at 1404.
 
 
 25
 In light of these cases, it is clear that the city of Sunrise cannot be liable for Lomelo's alleged bribery and extortion. Pembaur clearly states that even if an official is vested with final policy-making authority regarding the subject matter in question, not every act of that official will subject the city to liability under section 1983. The city of Sunrise neither adopted nor ratified Lomelo's bribery and extortive activities. Lomelo conducted these activities to benefit himself and his friends, not the city. To hold the city liable for Lomelo's actions in this case would in essence subject the city to vicarious liability for Lomelo's personal acts. Monell and its progeny prohibit us from so holding.
 
 
 26
 Furthermore, Lomelo was not the city's alter ego with respect to planning and zoning. The city council had the power to override Lomelo's veto and all zoning changes required approval from the city council, the planning and zoning commission and Lomelo, with the council having the final vote. The city did not develop a custom or practice which allowed Lomelo to function without any supervision or review with regard to zoning. See Mandel v. Doe, 888 F.2d 783, 794 (11th Cir.1989) (liability imposed where county initially contemplated supervision of physician assistants but developed practice authorizing the assistants to function without supervision or review). Additionally, Lomelo was not executing municipal policy when he acted contrary to controlling law regarding bribery and extortion. See Starrett v. Wadley, 876 F.2d 808 (10th Cir.1989). Consequently, the district court's grant of summary judgment in favor of the city of Sunrise is affirmed.
 
 B. Costs
 
 27
 Manor also contends that the district court erred in awarding the city of Sunrise costs because the Florida Insurance Guaranty Fund paid the city's litigation costs. According to Manor, under Rule 54(d) of the Federal Rules of Civil Procedure, costs are not recoverable if paid by a person or entity not a party to the proceeding.
 
 
 28
 In response, the city of Sunrise argues that it was the prevailing party in the lawsuit, and therefore, it is entitled to costs under rule 54(d). The city acknowledges that FIGA paid the costs of the litigation and completely controlled the defense, but argues that had Manor prevailed in this case, FIGA would have been obligated to pay Manor's litigation costs. Consequently, the city contends that FIGA is a party to the litigation within the meaning of rule 54(d), and thus the district court correctly awarded the city its litigation costs.
 
 
 29
 This court will not disturb an award of costs unless a clear abuse of discretion is demonstrated. Tanker Management, Inc. v. Brunson, 918 F.2d 1524, 1527 (11th Cir.1990) (citing Studiengesellschaft Kohle v. Eastman Kodak, 713 F.2d 128, 131 (5th Cir.1983). Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but whether the premise upon which the district court exercised its discretion was correct. See Collins v. Seaboard Coastline Railroad Co., 681 F.2d 1333, 1335 (11th Cir.1982).
 
 
 30
 Federal Rule of Civil Procedure 54(d) states:
 
 
 31
 Except when express provisions therefor is made either in a statute of the United States or in these rules, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise direct....
 
 
 32
 This language creates a presumption in favor of awarding costs to the prevailing party which Manor must overcome. See Coyne-Delany Co., Inc. v. Capital Development Board of Illinois, 717 F.2d 385 (7th Cir.1983). The thrust of Manor's opposition to the cost award is that the city made no specific showing that it is obligated to reimburse FIGA. Therefore, according to Manor, an award of costs would be an unnecessary windfall to both the city and FIGA.
 
 
 33
 This court has not previously addressed whether a prevailing party to a lawsuit may recover costs paid by a person or entity not a party to the lawsuit. The Florida Supreme Court, however, recently addressed this issue in Aspen v. Bayless, 564 So.2d 1081 (Fla.1990).* In Aspen, the Florida Supreme Court held that a party was not precluded from recovering costs when someone other than the named party paid or advanced those costs. Aspen, 564 So.2d at 1083. The court reasoned that "it is unnecessary to inquire into the source of the funds used for the initial payment of costs in order to award taxable costs to the winning party." Aspen, at 1083.
 
 
 34
 Florida Supreme Court decisions are not binding precedent on this court. Nonetheless, we find the Florida Supreme Court's reasoning instructive and persuasive. We further agree with the city's argument that had Manor prevailed in this case, FIGA would be fully liable for Manor's litigation costs and expenses under the insurance contract, and Manor would, after obtaining a judgment against the city, seek an amendment to that judgment obligating FIGA to pay its litigation costs. See Tanker Management, Inc. v. Brunson, 918 F.2d 1524, 1529 (11th Cir.1990). Thus, FIGA may be considered a party to the lawsuit for rule 54(d) purposes.
 
 
 35
 To adopt Manor's argument and prevent the city from regaining its costs would not only violate the presumption that a prevailing party is entitled to its costs under rule 54(d), but would also allow plaintiffs to bring lawsuits against insured defendants without incurring litigation costs after losing on the merits. Additionally, the city paid the premiums for FIGA's insurance coverage. Thus Manor, as the nonprevailing party, should not benefit from the city's insurance coverage. Accordingly, we hold that the district court did not abuse its discretion in awarding the city its costs.CONCLUSION
 
 
 36
 We hold that the mere empowering of a city official does not subject the city to section 1983 liability for every act of that official, including unlawful acts. Additionally, we hold that the city of Sunrise may recover its costs although it did not pay them. Accordingly, the judgment of the district court is affirmed.
 
 
 37
 AFFIRMED.
 
 
 
 *
 The Florida Supreme Court reaffirmed its holding in Aspen in Pine Island Lumber, Inc. v. Festa, 575 So.2d 204 (Fla.1991)