**William INGRAM, Plaintiff,**

v.

**Truman LEE, et al., Defendants.**

**Civ. A. No. 92–59–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Sept. 2, 1993.

**1334**

Fletcher Farrington, Savannah, GA, Dwayne H. Gillis, Douglas, GA, for plaintiff.

William A. Turner, Jr., Valdosta, GA, Berrien L. Sutton, Homerville, GA, for defendants.

## ORDER

OWENS, Chief Judge.

Before the court is a motion for summary judgment filed by defendants Truman Lee, City of Homerville, Georgia, and William Vest. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

On the evening of April 28, 1990, plaintiff William Ingram and his brother Joe Ingram were at Sweeney's Pool Hall in Homerville, Georgia, when plaintiff, after drinking beer for approximately three hours, got into a fight. After the altercation ended, Joe Ingram forced his brother to leave the pool hall to prevent further problems. According to plaintiff, as the brothers were leaving the bar defendant Truman Lee, Homerville's Chief of Police, approached them in his patrol car and asked what was the problem. According to defendants, however, Joe Ingram called out to Truman Lee and asked him to come talk to plaintiff. Either way, Lee convinced Joe Ingram to put plaintiff in the back of Lee's patrol car and proceeded to drive around with both Joe Ingram and plaintiff in the car. The facts are in dispute as to the exact reasons why plaintiff was put into the back of the patrol car. Nevertheless, as the patrol car proceeded up the street, plaintiff opened the back door and jumped out of the car. Truman Lee then allegedly stopped the car, walked around to plaintiff, and beat plaintiff on the head with his police-issue flashlight, causing massive head injuries. Defendant Truman Lee, however, denies that he ever hit plaintiff and asserts that plaintiff's injuries were caused by jumping out of the moving patrol car.

Plaintiff subsequently filed suit under 42 U.S.C. § 1983 and various state law theories against Chief of Police Truman Lee, the City of Homerville, Georgia, the city manager William Vest, the entire city council and the

mayor. After a status conference before the court, the parties agreed to dismiss the claims against the city council and the mayor.

### DISCUSSION

In this case, plaintiff is seeking to hold the City of Homerville, Georgia liable as a municipality for the civil rights violations alleged in the complaint. Plaintiff also seeks to hold Truman Lee liable in his individual and official capacity for the civil rights violations alleged in the complaint. Plaintiff has agreed to the dismissal of William Vest as a party to this case.

#### I. Municipal Liability

█ In response to the City of Homerville's ("City") motion for summary judgment, plaintiff has offered four reasons why the motion should be denied. First, plaintiff contends that the City's arrest policy is unconstitutional on its face and as applied. Second, plaintiff alleges that his injuries were caused by the City of Homerville's final policy-making authority in the area of law enforcement. Third, plaintiff argues that there is sufficient evidence to indicate the establishment of a policy or custom on the part of the city council by which they routinely acquiesced to the unlawful acts of the Chief of Police, Truman Lee. Finally, plaintiff contends that the city council failed to properly train and supervise Truman Lee, and that this failure led to plaintiff's injuries.

█ Plaintiff's first three arguments essentially fall within the three-part framework for municipal liability as set forth by the Eleventh Circuit Court of Appeals in *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir.1991) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480–83, 106 S.Ct. 1292, 1298–1300, 89 L.Ed.2d 452 (1986)). The single act of a municipal officer will create liability for the municipality if (1) the municipality "officially sanctioned or ordered" the act, (2) the municipal officer had final-policy making authority as defined by state law, or (3) the act was "taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area." *Manor Healthcare*, 929 F.2d at 637.

#### A. Unconstitutional Arrest Policy

Plaintiff contends that the handbook of rules and procedures used by the Homerville Police Department authorizes the unlawful seizure of citizens in violation of the United States Constitution. Because plaintiff was unlawfully seized by defendant Truman Lee pursuant to the unconstitutional arrest policy of the City, plaintiff asserts that defendant is not entitled to summary judgment.

Plaintiff's argument is without merit. Plaintiff's basic contention is that through the adoption of the Homerville Police Department Handbook, the City "sanctioned" the unconstitutional seizure of plaintiff. Rule 5.01 of the Homerville Police Department Handbook defines an arrest as "[t]he actual restraint or submission of a person into the custody of an officer to answer for the commission of a crime or violation of a city ordinance." (Handbook ¶ 5.01.) On the same page in the handbook, rule 5.03 then defines an illegal arrest as "the unlawful restraint of person's liberty for no matter how short a time." (Handbook ¶ 5.03.) In addition, the handbook clearly states that an officer may be subject to civil liability for an unlawful arrest. (Handbook ¶ 5.03.) Finally, the handbook directs officers to "obey all laws of the United States, of this state, and of the local jurisdiction." (Handbook ¶ 1.04.)

Contrary to plaintiff's assertion, nothing in the handbook authorizes an officer to illegally seize a person in violation of the Constitution. In fact, assuming plaintiff's description of the facts as correct, Truman Lee's actions on the night of April 28, 1990 would not only have been in contravention of federal law, but also the rules and procedures of the Homerville Police Department. The adoption of the handbook by the City in no way operates to "sanction" illegal seizures by its employees.

#### B. Final Policy–Making Authority

Plaintiff's second argument is that because Truman Lee had final policy-making authority in regard to the police department, his actions in this area give rise to municipal liability on the part of the City. Truman Lee, however, is not the final policy-making authority for the Homerville Police Department.

■ The question as to whether an official has final policy-making authority is a "question of law to be resolved by the trial court judge." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989).

> In making this determination, the court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law. The court must also ensure that the municipal official possesses the authority and responsibility for establishing final policy with respect to the issue in question.

*Mandel*, 888 F.2d at 793 (citations omitted).

As the interrogatories, depositions and plaintiff's own brief in opposition to defendant's motion for summary judgment indicate, the final approval of all policy affecting the Homerville Police Department lies with the city council. ((Def.'s Interrog. 2(c)); (Hardee Dep. at 8); (McLaine Dep. at 6); (Chambers Dep. at 6); (Pl.'s Br. at 5, ¶ 2.)) Although the chief of police and the city manager draft the written procedures and policies of the department, these procedures and policies are subject to final approval by the city council. Accordingly, it is the city council that retains final policy-making authority over the Homerville Police Department.

■ The decision in *Manor Healthcare* supports the view that it is the city council, not the chief of police, that retains final policy-making authority in this situation. In *Manor Healthcare*, the plaintiff contended that since the defendant mayor had de facto control over the zoning decisions of the city, the mayor retained final policy-making authority in this area. *Manor Healthcare*, 929 F.2d at 638. However, the Eleventh Circuit held that because the actions of the mayor were reviewable by the city council, the mayor was not the final policy-maker in the area of zoning decisions. *Id.* The decision in *Manor Healthcare* makes it clear that for municipal liability to attach, the officer must have unreviewable authority to set policy. *See also Mandel*, 888 F.2d at 793. Truman Lee does not have this authority.

### C. City Council Policy

Plaintiff's next argument for municipal liability is that even if Truman Lee is not the final policy-making authority, there is sufficient evidence to indicate that a policy existed on the part of the City to approve any action taken by Lee. In essence, plaintiff is contending that a municipal custom or practice existed to approve the illegal actions of Truman Lee.

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.

*Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991) (citations omitted). Plaintiff has offered no evidence that a "longstanding and widespread" practice existed on the part of the city council to approve the illegal actions of its employees.

Plaintiff states, however, that the city council was aware of another allegation of excessive force against Lee and failed to take action in that situation also. This allegation arose after the incidents involving plaintiff occurred, and in no way establishes a "permanent and well-settled" custom on the part of the City to ratify the actions of Truman Lee. In fact, plaintiff has failed to offer any evidence that prior to plaintiff's allegations against Lee, the city council was aware of any excessive force or illegal restraint complaints against Lee. In the absence of such evidence, no custom or practice on the part of the City can be established.

In *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), a plurality decision, the Supreme Court wrote:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their

ratification would be chargeable to the municipality because their decision is final. *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926. Plaintiff contends that under this holding, the municipality is liable because the city council approved the actions of Truman Lee. However, in explaining the above passage, the Court wrote:

> Simply going along with *discretionary* decisions made by one's subordinates, however, is not a delegation of the authority to make policy.... It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policy maker. It would also be a different matter if a series of decisions by a subordinate official manifested a "custom or usage" of which the supervisor must have been aware.

*Praprotnik*, 485 U.S. at 130, 108 S.Ct. at 928 (emphasis added). There is no evidence to indicate that the actions of Truman Lee in any way represented a "policy statement" that was "expressly approved" by the city council. In addition, as discussed above, there is no evidence to indicate that the city council was aware of a custom or practice on the part of Lee to illegally restrain citizens or use excessive force.

Therefore, because plaintiff has failed to establish municipal liability under the Eleventh Circuit's decision in *Manor Healthcare*, it is necessary to address plaintiff's contention that municipal liability rests in the City's failure to properly train Truman Lee.

### D. Failure to Train

■ In *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988), the Supreme Court held that a municipality may be held liable under § 1983 when the municipality's failure to train reflects a policy of deliberate indifference to the constitutional rights of its citizens. *Canton*, 489 U.S. at 392, 109 S.Ct. at 1206. In addition, the failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by a municipality...." *Id.* at 389, 109 S.Ct. at 1205. Plaintiff has failed to meet his burden of establishing a failure to train claim. First, plaintiff has failed to provide any evidence that Truman Lee was not

adequately or properly trained in the use on non-lethal force. Second, assuming arguendo that Lee was not properly trained, plaintiff has also failed to produce any evidence that this failure to train was the result of a "deliberate" or "conscious" decision made by the City. Accordingly, defendants' motion for summary judgment on plaintiff's § 1983 claim against the City of Homerville, Georgia is **GRANTED.**

## II. Individual Liability

### A. Truman Lee

■ Because a genuine issue of fact exists as to the actions of defendant Truman Lee on April 28, 1990, defendants' motion for summary judgment on plaintiff's § 1983 claim against Truman Lee is **DENIED.**

### B. William Vest

By agreement of the parties, plaintiff's § 1983 claim against William Vest is **DISMISSED WITHOUT PREJUDICE.**

## III. STATE LAW CLAIMS

■ Plaintiff has also alleged various state law claims against defendants. The court finds that these claims substantially predominate over plaintiff's remaining § 1983 claim and are likely to cause confusion to the jury. Accordingly, the court **DECLINES** to exercise supplemental jurisdiction over all state law claims in this case and **DISMISSES** them **WITHOUT PREJUDICE.**

## CONCLUSION

The motion for summary judgment filed by defendant City of Homerville, Georgia is **GRANTED** on all claims filed against defendant under § 1983. The motion for summary judgment filed by defendant Truman Lee is **DENIED** on all claims filed against defendant under § 1983. In addition, all claims filed against defendant William Vest under § 1983 are **DISMISSED WITHOUT PREJUDICE** by agreement of the parties.

Finally, the court **DECLINES** to exercise supplemental jurisdiction over plaintiff's state law claims against **ALL** defendants in

this case. Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**