Charles MIZELL, et al., Plaintiffs,

v.

Truman LEE, et al., Defendants.

Civ. A. 92–97–VAL (WDO).

United States District Court,
M.D. Georgia,
Valdosta Division.

Sept. 2, 1993.

Dwayne H. Gillis, Rebecca L. Sims, Douglas, GA, for plaintiffs.

William A. Turner, Jr., Valdosta, GA, Berrien L. Sutton, Homerville, GA, for defendants.

## ORDER

OWENS, Chief Judge.

Before the court is a motion for summary judgment filed by defendants City of Homerville, Georgia, William Vest, Carol Chambers, June McLaine, William Hardee, Gail DeLoach and Marie Barclay. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

On July 28, 1990, Charles Mizell stopped at a bar located in Homerville, Georgia. While at the bar, Mizell became involved in an altercation and the police were called. Chief of Police Truman Lee, Officer Mark Register and Officer George Blankenship responded to the call. According to Mizell, when the police arrived, they proceeded to attack Mizell and beat him. The officers involved, however, contend that every reasonable effort was taken to peacefully subdue Mizell, who was resisting arrest. Eventually, Mizell was handcuffed and transported to the county jail. As a result of the altercation with the police officers, Mizell suffered two broken ribs. Mizell contends that Officers Lee, Register and Blankenship used excessive force in illegally restraining Mizell in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

After being arrested, Mizell was charged in the Recorder's Court with three misdemeanor offenses. The Judge of the Recorder's Court is William Vest. Vest also serves as the city manager of Homerville. Included within his duties as city manager is supervision of the police department. Mizell contends that a conflict of interest exists in the fact that the supervisor of the police department also serves as the presiding judge in the Recorder's Court. Mizell further contends that this conflict resulted in several procedural irregularities that served to deprive him of rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## DISCUSSION

In this case, plaintiffs are seeking to hold the City of Homerville, Georgia liable as a municipality for the civil rights violations alleged in the complaint. Plaintiffs also seek to hold William Vest liable in his individual and official capacity for the civil rights violations alleged in the complaint. Plaintiffs have agreed to the dismissal of Carol Chambers, June McLaine, William Hardee, Gail DeLoach and Marie Barclay as parties to this case.

In their complaint, plaintiffs alleged that the actions of defendants deprived them of rights guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Defendants' motion before this court, however, only seeks summary judgment in regard to plaintiffs' claims of unreasonable seizure and use of excessive force in violation of the Fourth and Fourteenth Amendments. The court's discussion, therefore, is limited to this area.

### I. Municipal Liability

In response to the City of Homerville's ("City") motion for summary judgment, plaintiffs have offered three reasons why the motion should be denied. First, plaintiffs contend that plaintiff Charles Mizell was injured by the final policy-maker in the area of law enforcement for the City. Second, plaintiffs allege that the structure and operation of the city government created a policy under which police officers believed that the use of excessive force was sanctioned by the City. Third, plaintiffs contend that if defendant Truman Lee is not the final policy-maker in the area of law enforcement for the City, then the acquiescence of the city council to alleged unconstitutional actions by Lee established a custom under which the City condoned the use of excessive force by Lee and other officers.

### A. Final Policy–Maker

Plaintiffs' first argument is that because Chief of Police Truman Lee had final policy-making authority in the area of law enforcement, his actions in this capacity give rise to municipal liability on the part of the City. *See Manor Healthcare Corp v. Lomelo,* 929

F.2d 633, 637 (11th Cir.1991) (the single act of a municipal officer will create liability for the municipality if the officer had final policy-making authority as defined by state law). Truman Lee, however, is not the final policy-making authority for the Homerville Police Department.

■ The question as to whether an official has final policy-making authority is a "question of law to be resolved by the trial court judge." *Mandel v. Doe,* 888 F.2d 783, 793 (11th Cir.1989).

> In making this determination, the court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law. The court must also ensure that the municipal official possesses the authority and responsibility for establishing final policy with respect to the issue in question.

*Mandel,* 888 F.2d at 793 (citations omitted).

■ As the interrogatories, depositions and plaintiffs' own brief in opposition to defendants' motion for summary judgment indicate, the final approval of all policy affecting the Homerville Police Department lies with the city council. ((City's Resp. to Pls.' Interrog. 2(c)); (Hardee Dep. at 8); (McLaine Dep. at 6); (Chambers Dep. at 6); (Pl.'s Br. at 5, ¶ 2.)) Although the chief of police and the city manager draft the written procedures and policies of the department, these procedures and policies are subject to review and final approval by the city council. Accordingly, it is the city council that retains final policy-making authority over the Homerville Police Department.

The decision by the Eleventh Circuit Court of Appeals in *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 637 (11th Cir.1991), supports the view that it is the city council, not the chief of police, that retains final policy-making authority in this situation. In *Manor Healthcare,* the plaintiff attempted to hold the City of Sunrise, Florida liable under § 1983 for an extortion attempt on the part of its mayor. The mayor had told the plaintiff, a corporation engaged in the business of building and operating nursing homes, that for $30,000 the mayor would help the plaintiff

acquire zoning approval for a new development. The plaintiff contended that the mayor had final policy-making authority in the area of zoning decisions because: he had direct supervision over the zoning department; he could veto legislative ordinances and resolutions—including those of the zoning department; and, through his eighteen years in office, he had acquired de facto control over the zoning decisions of the city. *Manor Healthcare*, 929 F.2d at 638. The Eleventh Circuit, however, held that because the actions of the mayor were reviewable by the city council, the mayor was not the final policy-maker in the area of zoning decisions. *Id.*[1] In light of the decision in *Manor Healthcare*, it is difficult to imagine how Truman Lee could possibly be a final policy-maker. The decision in *Manor Healthcare* clearly establishes that for municipal liability to attach, the officer must have *unreviewable* authority to set policy. *Id.; see also Mandel*, 888 F.2d at 793. Truman Lee does not have this authority.

### B. Policy Established by Format

█ Plaintiffs' second argument is that the conflict of interest created by having the same person in both the position of city manager and Recorder's Court Judge, "has led Chief Truman Lee to believe that his unconstitutional use of excessive force and other misconduct will be sanctioned and covered by William Vest." (Pls.' Br. at 14, ¶ 1.) Plaintiffs' argument essentially boils down to the contention that the format of the city government and the conflicts developed thereunder created an informal policy—that is, a custom—under which Truman Lee believed that his alleged unconstitutional actions were condoned. This argument is without merit.

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" In other words, a longstanding and widespread

practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.

*Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991) (citations omitted). Plaintiffs have provided no evidence to support their contention that the conflicts of interest in the city government in any way led Truman Lee to believe that a policy existed on the part of the City to sanction and protect his alleged illegal activities. Further, plaintiff has pointed to no other situation in which this alleged "custom" was implemented by the City. This holding does not, however, address plaintiffs' contention that this same conflict of interest may have led to other constitutional deprivations. That question is not before the court.

### C. Policy Established by Ratification

█ Plaintiffs' final argument is that even if Truman Lee is not the final policy-maker, then the acquiescence of the city council to the alleged unconstitutional actions of Truman Lee established a custom under which the use of excessive force by Lee and other officers was condoned by the City.

In *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), a plurality decision, the Supreme Court wrote:

[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926. Plaintiffs contend that under this holding, the municipality is liable because the city council approved the actions of Truman Lee. However, in explaining the above passage, the Court wrote:

Simply going along with *discretionary* decisions made by one's subordinates, however, is not a delegation of the authority to make policy.... It would [ ] be a different matter if a series of decisions by a

---

1. In fact, although the city council had the power to override a veto of the mayor, this could only be done on a four-fifths vote of the council. *Manor Healthcare*, 929 F.2d at 637.

subordinate official manifested a "custom or usage" of which the supervisor must have been aware.

*Praprotnik*, 485 U.S. at 130, 108 S.Ct. at 927–28 (emphasis added).

Standing alone, the failure of the City to investigate the allegations leveled by plaintiff Charles Mizell against Truman Lee in no way establishes a policy or custom on the part of the City to acquiesce to the alleged unconstitutional actions of Lee. The Eleventh Circuit clearly spelled out in *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991), that to establish a policy based on custom or usage, a longstanding and widespread practice must exist. Merely alleging that the City failed to adequately respond to the allegations of one person is not sufficient to establish a policy based on custom or usage. Plaintiffs, however, have alleged that the City not only acquiesced to the actions of Truman Lee in the present case, but that the City also acquiesced in a prior case involving the use of excessive force by Lee. See *Ingram v. Lee*, 829 F.Supp. 1333 (M.D.Ga.1993). Therefore, in accordance with the Supreme Court's decision in *Praprotnik*, a genuine issue of material fact exists as to whether a custom existed on the part of the city council to acquiesce to the use of excessive force by defendant Truman Lee. Accordingly, defendants' motion for summary judgment on plaintiffs' § 1983 claim against the City of Homerville, Georgia for violations of the Fourth and Fourteenth Amendments to the United States Constitution is **DENIED.**

## II.   Individual Liability

### A.   William Vest

In response to defendant William Vest's motion for summary judgment, plaintiffs have offered three reasons why the motion should be denied. First, plaintiffs contend that because William Vest, in conjunction with Chief of Police Truman Lee, is the final policy-maker in the area of law enforcement, that Vest is liable for Truman Lee's alleged illegal restraint of Charles Mizell and use of excessive force. Second, plaintiffs argue that the conflict of interest created by William Vest holding both the position of city manager and Recorder's Court Judge led Truman

Lee to believe that his alleged unconstitutional acts were sanctioned by the City. Finally, plaintiffs argue that the failure of William Vest to properly supervise Truman Lee led to the alleged constitutional violations suffered by Charles Mizell.

■   A central element for liability under § 1983 is the concept of "causation." In order for liability to attach, a plaintiff must establish a causal link between the actions of the defendant and the alleged injury. See *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir.1993); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988). "[S]ection 1983 'requires proof of an affirmative causal connection between the actions taken by a particular person "under color of state law" and the constitutional deprivation.'" *LaMarca*, 995 F.2d at 1538 (quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.1982)).

■   Plaintiffs have not alleged that William Vest actually participated in the acts that deprived plaintiff Charles Mizell of his rights under the Fourth and Fourteenth Amendments. Plaintiffs have alleged that as a final policy-maker for the Homerville Police Department, William Vest is liable for the constitutional deprivations caused by Truman Lee's alleged illegal actions. William Vest, however, is not the final policy-maker in the area of law enforcement for the City of Homerville. As discussed above, final policy-making authority lies with the city council. Further, plaintiffs have failed to offer any evidence establishing a causal link between Vest's conflict of interest as city manager and Recorder's Court Judge, and the alleged illegal restraint of Charles Mizell and use of excessive force by Officers Lee, Register and Blankenship.

■   There is evidence, however, that as Truman Lee's supervisor, William Vest failed to properly supervise or control his chief of police. In determining if a causal connection exists between the actions of a defendant and alleged constitutional deprivations, "[w]hether a defendant actually controls, or fails properly to supervise a subordinate, ... may prove to be relevant...." *LaMarca*, 995 F.2d at 1538. Because Vest was aware of a prior allegation of excessive

force leveled against Lee and failed to take any steps to investigate or correct the alleged abuses, there is a genuine issue of material fact as to whether Vest failed to properly supervise or control Truman Lee. Accordingly, defendants' motion for summary judgment on plaintiffs' § 1983 claim against William Vest is DENIED.

### B. *Carol Chambers, et al.*

By agreement of the parties, plaintiffs' § 1983 claims against Carol Chambers, June McLaine, William Hardee, Gail DeLoach, and Marie Barclay are **DISMISSED WITHOUT PREJUDICE.**

### III. STATE LAW CLAIMS

Plaintiffs have also alleged various state law claims against defendants. The court finds that these claims substantially predominate over plaintiffs' remaining § 1983 claims and are likely to cause confusion to the jury. Accordingly, the court **DECLINES** to exercise supplemental jurisdiction over all state law claims in this case and **DISMISSES** them **WITHOUT PREJUDICE.**

### *CONCLUSION*

The motion for summary judgment filed by defendant City of Homerville, Georgia on plaintiffs' § 1983 claim is **DENIED.** The motion for summary judgment filed by defendant William Vest on plaintiffs' § 1983 claim is **DENIED.** In addition, all claims filed against defendants Carol Chambers, June McLaine, William Hardee, Gail DeLoach, and Marie Barclay under § 1983 are **DISMISSED WITHOUT PREJUDICE** by agreement of the parties.

Finally, the court **DECLINES** to exercise supplemental jurisdiction over plaintiffs' state law claims against **ALL** defendants in this case. Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**