Charles G. BLACK, Plaintiff,

v.

EQUINOX FINANCIAL MANAGEMENT SOLUTIONS, INC., Defendant.

No. CIV.A. 1:05–CV–1588–.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 10, 2006.

Lisa Dionne Wright, Law Office of Lisa D. Wright, Atlanta, GA, for Plaintiff.

Michelle Rae Legault, Finley & Buckley, Atlanta, GA, John H. Bedard, Jr., Robert Scott Johnson, Franzen & Salzano, Norcross, GA, Monica Kocurek Gilroy, McCalla Raymer Padrick Cobb Nichols & Clark, Roswell, GA, for Defendant.

## ORDER

MARTIN, District Judge.

This action is before the court on Plaintiff's Motion to Set Aside Court's Judgment Awarding Costs to Equinox Financial Management Solutions, Inc. [Doc. No. 168] and Defendant Equinox's Countermotion for Attorney Fees and Costs Pursuant to 15 U.S.C. § 1692k(a)(3) [Doc. No. 170].

## I. *Factual and Procedural Background*

Plaintiff Charles G. Black ("Black") has a son whose name is Charles G. Black, II ("Black, Jr."). In January 2004, Black, Jr. purchased a gym membership from Crunch Fitness d/b/a Bally's Total Fitness ("Crunch"). Black, Jr. signed a membership contract and promised to pay a monthly membership fee of $44.00. Black, Jr. stopped making monthly payments and defaulted on the agreement.

On or about July 24, 2004, Crunch sold the defaulted account to Asset Acceptance LLC ("Asset Acceptance"). From the inception of Asset Acceptance's receipt of this account, Asset Acceptance's records associated the name "Charles G. Black" and Black's social security number with the Crunch account rather than the name and social security number of Black, Jr. Asset Acceptance reported the past due account along with Black's social security number to at least one credit reporting agency.

In July 2004, Asset Acceptance hired Equinox Financial Management Solutions, Inc. ("Equinox"), to collect the Crunch account. Asset Acceptance advised Equinox that the account belonged to "Charles Black" and provided Equinox with Black's social security number as the social security number associated with the account. Equinox never attempted to collect the debt from Black.

Between approximately August 2004 and January 2005, Black obtained his credit report, which showed his son's delinquent Crunch account. The credit report also indicated that Asset Acceptance, not Equinox, had reported the Crunch account as delinquent. On September 5, 2004, Black telephoned Equinox regarding the improper reporting of the Crunch account on his own credit report. He informed Equinox that the account was his son's and should be deleted from his credit file. From September 15, 2004, through February 4, 2005, Equinox failed to notify Asset Acceptance that the account did not belong to Black and that it should not be on his credit report.

On February 4, 2005, Black applied to BancMortgage for a residential mortgage refinance. BancMortgage obtained Black's credit report, which included the Crunch account (as reported by Asset Acceptance) as an account that had been charged off with a $1,446.00 balance due. On February 11, 2005, Black faxed to Equinox a notarized letter, written by his son, explaining that the Crunch debt was his (the son's) and requesting that it be removed from Black's credit report. Rick Martin ("Martin"), the president of Equinox, read the letter and created an entry in Equinox account records to document that it had been received. Later that day, Black called Equinox and spoke with Martin. Black explained to Martin that the Crunch account was his son's account and not his.

At his deposition for this case, Martin testified that within twenty-four hours of the February 11, 2005 telephone call, he caused Equinox to cease all collection activity on the account. He also entered a code in Equinox's records indicating that the account was in dispute, forwarded the information he had received from Black to Asset Acceptance, and contacted "Lucy" at Asset Acceptance and told her about Black's problem. (*See* Martin Dep., 17:3–8, 11–15; 123:11–13, Jan. 30, 2006.) Martin did nothing further to resolve the dispute and did not follow up with Asset Acceptance. Black, on the other hand, indicated at his deposition for this case

that he did not know what action, if any, Martin had taken to investigate this dispute after the February 11, 2005 telephone call.

Black had no further communication with Equinox. The law firm handling the closing of the refinancing of Black's mortgage paid off the Crunch account in the amount of $1,446.00. Equinox, which made no effort to return the money to Black, processed the payment on February 22, 2005. As of that date, the social security number on the Crunch account had not been changed to that of Black, Jr.

In his Amended Complaint, Black asserted various claims against Equinox under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). By Order dated December 9, 2005 (the "December 9 Order"), the court dismissed all but Black's claim arising under 15 U.S.C. § 1692e(10) ("Section 1692e(10)"), which forbids "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). As the court explained, "Section 1692e(10) typically implicates a debt collector's communication(s), either written or oral, concerning the collection of a debt allegedly owed by the plaintiff." (Dec. 9 Order 6.) Nevertheless, the court went on to hold that

> based upon the record now before it, . . . Mr. Black has stated a claim against Equinox under Section 1692e(10). Mr. Black has alleged that Equinox lied—that is, that Equinox made a false representation,' 15 U.S.C. § 1692e(10)—when it promised to investigate why Access Acceptance was reporting the delinquent Account on Black's credit file.

(Dec. 9 Order 9.)

Meanwhile, the parties engaged in settlement discussions. Equinox has pro-duced evidence indicating that on December 22, 2005, it served Black with an Offer of Judgment in the amount of one thousand dollars for statutory damages, plus two hundred dollars for actual damages, as well as "an additional $300 toward settlement." (Def.'s Mot. for Fees, Ex. A, 2–3.) The parties engaged in further discussions thereafter, but Black rejected each one of Equinox's settlement offers. (*Id.*, Ex. C, 2–3.) Finally, on January 24, 2006, Black's counsel wrote Equinox's counsel the following e-mail:

> Your continued requests for settlement demands serve[ ] no other purpose but to increase the time billed on this matter for attorney's fees. Therefore, I am respectfully requesting that you please stop begging me for a settlement demand in the Black v. Equinox Information Solutions, Inc. matter.

> If your client seeks to resolve this matter without continuing in the litigation, then your client is free to make a settlement offer regarding all acceptable terms of settlement. Once any offer is received by my office, then I am obligated to present that settlement offer to my client and I promise to provide you with his response as soon as it is possible.

(*Id.*, Ex. D, 2.)

Black, on the other hand, alleges (1) that on August 9, 2005, and September 7, 2005, Black's counsel and Equinox's counsel engaged in settlement discussions; (2) that Black's counsel informed Equinox's counsel on January 10, 2006, that "Black . . . is not interested in discussing settlement of this matter until all depositions have been taken"; and (3) that on February 28, 2006, Equinox offered to settle for $3,500.00 while Black was requesting $12,000.00, and settlement could not be reached. (Br. in Supp. of Pl.' Resp. 8–10.)

Ultimately, the court adopted the recommendation of the Magistrate Judge that summary judgment be awarded to Equinox with respect to Black's Section 1692(e)(10) claim. The Magistrate Judge reasoned, and this court agreed, that:

> [t]he testimony highlighted by Black establishes that Martin did not promise that the dispute would be resolved to Black's satisfaction, much less at any particular time. Martin made clear to Black that any resolution of the matter required approval by Asset Acceptance, Equinox's client. Martin promised only that he would look into the matter, contact his client, and try to take care of it. The evidence is undisputed that Martin did as he promised. . . .
>
> The evidence is undisputed that Asset Acceptance, not Equinox, caused the Crunch account to report[ ] as Black's debt to a credit reporting agency. There is no evidence that Equinox had the authority or ability to change the information on Black's credit report. Therefore, the fact that the information remained on Black's credit report does not demonstrate that Equinox made false, deceptive or misleading statements. Further, that Equinox did not notify BancMortgage of the error, did not follow up with Asset Acceptance after Martin's initial communication, did not return the payment on the Crunch account to the law firm from which it was sent, and retained fees for collection of the account does not demonstrate that Martin's statements to Black on February 11, 2005 were false, deceptive or misleading.

(June 28 Order 7–8 (quoting Apr. R & R 10–11).)

The Clerk of the Court recited in the Judgment entered in favor of Equinox that it was entitled to its costs. This language is routinely employed by the Clerk of the Court in entering judgments, in accordance with Federal Rule of Civil Procedure 54(d). Rule 54(d) provides, in part, that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."

Black now contends that under 15 U.S.C. § 1692k(a)(3) ("Section 1692k(a)(3)") he may not be required to pay such costs because he prosecuted the action in good faith, and because Section 1692k(a)(3) preempts a Rule 54(d) cost award. Equinox, on the other hand, contends that Black prosecuted the action in bad faith and that, even short of a finding of bad faith by this court, Equinox is entitled to its costs by operation of Rule 54.

## II. *Rule 54 Costs*

As the court mentioned above, the Judgment entered in favor of Equinox provided that costs would be charged to the plaintiff. This Rule 54 award of costs was in and of itself contested by counsel for Mr. Black prior to any effort by Equinox to also obtain attorneys' fees. However, this assessment of costs is routinely made to the prevailing party, as called for by Rule 54(d). Indeed, Rule 54(d) creates a presumption that costs will be awarded to the prevailing party. *See Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 639 (11th Cir.1991).

Black's additional argument that an assessment of Rule 54(d) costs in favor of Equinox, as the prevailing party, is preempted by the required finding of bad faith under 15 U.S.C. 1692k(a)(3), is not

entirely supported by precedent. The Eleventh Circuit has not decided the issue, and the parties have referred the court to conflicting U.S. District Court decisions on the subject.[1] The court does not feel compelled to decide the issue however, because, as will be discussed below, the court has found that the standard for an award of attorneys' fees under 15 U.S.C. 1692k(a)(3) has been met, for at least part of the duration of this litigation. Black's Motion to Set Aside Court's Judgment Awarding Costs to Equinox Financial Management Solutions, Inc. [Doc. No. 168] is GRANTED IN PART and DENIED IN PART.

### III. *Attorneys' Fees Standard*

The FDCPA provides that "[o]n a finding by the court that an action … was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). Neither the parties nor the court has identified a case arising in the Eleventh Circuit interpreting this "bad faith" condition of an award of attorneys' fees to a prevailing defendant. Nevertheless, several courts in other circuits have considered the issue. In *Shah v. Collecto, Inc.*, No. Civ.A.2004–4059, 2005 WL 2216242, at *14 (D.Md. Sept. 12, 2005), for instance, a federal district court held that "[b]ad faith is 'not simply bad judgment or negligence, but implies the conscious doing of a wrong

because of a dishonest purpose or moral obliquity; … it contemplates a state of mind affirmatively operating with furtive design or ill will.'" (quoting *Black's Law Dictionary* 139 (6th ed.1990)). The hallmark of a bad-faith lawsuit is one "where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass … rather than to obtain a favorable judgment." *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985); *see Jacobson v. Healthcare Fin. Servs.*, 434 F.Supp.2d 133, 141 (E.D.N.Y.2006) (holding that "[t]he fact that a defendant is entitled to summary judgment does not provide the basis for [a finding of bad faith,]" but that plaintiff's admissions at argument that he did not feel harassed by a dunning letter evidenced that plaintiff both knew that his claim was meritless and pursued it with the purpose of harassing the defendant).

In this action, Black's Section 1692(e)(10) claim against Equinox was based on little more than a hunch. Black reasoned that since his credit standing did not improve as a result of the February 11, 2005 telephone call, Martin must have lied when he represented that he would "look into the matter." Black took no steps prior to filing his Complaint to confirm this hunch. Nevertheless, Black now argues that discovery was required to "determine what actions were taken by [Equinox] in February 2005." (Br. in Supp. of Pl.'s Resp. 3.) In the court's view, such discovery may have been necessary only insofar as Black sought to uncover whether Mar-

---

1. The court feels it important to make the point, however, that most Circuit courts have upheld the principle that simply because a plaintiff files a lawsuit in good faith does not bar recovery of costs by a prevailing defendant pursuant to Rule 54(d). *See, e.g., AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir.1997) ("the district court's finding that AeroTech did not initiate its suit against Vernon Estes in bad faith is insufficient to permit the court to deny costs under Rule 54(d). All parties to a federal action have an obligation to act in good faith and with proper purpose." (internal quotations and citation omitted)). The court is aware that in *AeroTech*, the Tenth Circuit was not addressing the ERISA statute.

tin lied to him.[2] By the close of discovery, then, it should have been abundantly clear to Black that he had not produced a scintilla of evidence indicating that Martin had done anything other than what he had promised to do. That Black continued to press his claim through summary judgment can only be attributed to a bad faith effort to run up attorneys' fees and costs in hopes of a last minute settlement or to a similarly bad faith gamble that the claim might proceed to trial despite its lack of merit. In either case, bad faith was the *sine qua non* of Black's prosecution of this action after the end of discovery. Accordingly, and pursuant to 15 U.S.C. § 1692k(a)(3), the court awards Equinox attorneys' fees and costs for its defense of this action from February 13, 2006, the date discovery ended in this case.[3]

## IV. *Summary*

Plaintiff's Motion to Set Aside Court's Judgment Awarding Costs to Equinox Financial Management Solutions, Inc. [Doc.

No. 168] is GRANTED IN PART AND DENIED IN PART, as set forth herein. Defendant Equinox's Countermotion for Attorney Fees and Costs Pursuant to 15 U.S.C. § 1692k(a)(3) [Doc. No. 170] is also GRANTED IN PART AND DENIED IN PART. Defendant is hereby granted ten (10) days to file evidence of its attorneys' fees and costs in defending this action as the court has allowed by this Order. Plaintiff may file a response within (10) days of the entry of Defendant's filing on the docket.

2. Black's counsel is very active in this court, and is known to the court to aggressively advocate for her clients, which is certainly commendable. However, the court feels it would not be fulfilling its obligation to the legal profession if it did not here make the point that accusing another person of lying is a very serious undertaking, whether it is in the context of litigation or not. Further, when such a serious accusation is not withdrawn after evidence of the accusation is fully investigated, and found to be lacking, the definition of bad faith as this court understands it, has been met.

In an ideal world, an investigation of what steps Martin took would have been prior to the filing of the Complaint in this case. Aside from the reputational consequences to Equinox and Martin of simply having the allegation made, the formal requirements of discovery elevate the costs to both parties as well as the court, all of which might have been avoided by a thorough pre-filing investigation of the facts.

3. The court acknowledges that by not deciding the issue of whether 15 U.S.C. § 1692k(a)(3) preempts an award of costs under Rule 54(d), it has not decided the issue of whether Equinox is entitled to its costs (but not attorneys' fees) prior to the February 13, 2006 date. Because (1) Equinox candidly acknowledged that the precedent on this question goes both ways; (2) Equinox argues its right to recovery pursuant to Rule 54(d) as an alternative to recovery pursuant to § 1692(a)(3), and (3) it will no doubt take more litigation, up to and through an appeal to resolve the issue, the court is content to let the issue go unresolved. If Equinox feels it must have a ruling in this regard, it can simply so advise the court when it submits its Bill of Costs.