**VAN T. JUNKINS AND ASSOCIATES, INC., an Alabama corporation, Plaintiff-Appellant,**

v.

**U.S. INDUSTRIES, INC., et al., Defendants-Appellees.**

No. 83–7380.

United States Court of Appeals, Eleventh Circuit.

July 17, 1984.

Charles Dunn, Birmingham, Ala., for plaintiff-appellant.

T. Thomas Cottingham, Julia Smeds, F.A. Flowers, III, Birmingham, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The plaintiff-appellant Van T. Junkins and Associates, Inc. (Junkins) claims in this appeal that the district court erred in granting summary judgment to the defendants-appellees, U.S. Industries, Inc., A & S Building Systems, Inc., and others (A & S). To support its motion for summary judgment, A & S filed the deposition of Junkins, President of plaintiff. Prior to the hearing on A & S's motion, plaintiff filed nothing in contradiction to the deposition. Two weeks later Junkins filed its affidavit, although untimely, in that Fed.R.Civ.P. 56 requires that opposing affidavits be filed prior to hearing. The district court considered the affidavit, found it to contradict in part Junkins' testimony on deposition, but then found the affidavit to be a sham and granted A & S's motion. Although there may be some occasions where a party may by affidavit clarify testimony given in his deposition and thereby create a genuine issue as to a material fact, we affirm the district court here and hold a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation.

Junkins' complaint alleges that it was in the business of constructing prefabricated buildings and that the defendant was in the business of supplying such buildings. It alleges that the defendant contacted it about becoming a dealer and through their agents told Junkins that one of the terms and conditions of a dealership agreement

would be that plaintiff purchase one of defendant's buildings. Plaintiff alleges that it relied upon these representations, purchased a building and land upon which to put it, but that thereafter the defendant refused to enter into the dealership contract. Plaintiff claimed damages for fraud and reckless misrepresentations.

Junkins' deposition was taken May 7, 1982 by counsel for the defendant. Junkins testified that Dunbar and Smith, representatives of A & S, contacted him and then visited with him, explaining that they understood he was contemplating building a prefabricated building and wanted also to know if he were interested in being a dealer. Junkins stated he was and that the building would be his office building and also a warehouse for building supplies. He said he also had thought about becoming a dealer for a manufacturer of such buildings. Junkins, Dunbar, and Smith left Junkins' office and went to dinner, which was attended for a portion of the time by Charles Hollis, Superintendent for Junkins and Associates and Stewart Sims, a real estate agent in Pelham, Alabama, where Junkins apparently planned to construct the prefabricated building. Two or three weeks later the three principals met again. Dunbar and Smith brought the contract for the sale of the building and also brought literature about A & S. They mentioned to the restaurant manager where they were dining that Junkins was going to be a new dealer for their company. Charles Hollis, as superintendent for Junkins, signed the contract to purchase the building from A & S on February 24, 1981, two or three days after this meeting.

Junkins makes it clear on deposition that he had been contemplating buying a prefabricated metal building, that representatives of A & S contacted him saying that they had heard he needed a building, and that before he ordered the building no one stated that he had to buy a building from A & S as a condition, a term, or a prerequisite to becoming a dealer. The fact that there was no condition attached to his purchasing the building was made crystal clear in three places in the deposition. He further

admitted that he had been told by Dunbar that his application for dealership had to go through a review board and that somebody other than Dunbar had to approve the application. The proposed dealership agreement which was signed by Junkins on May 7, 1981, clearly states that it must be approved by a duly authorized representative of A & S at its main office in Houston. Junkins in his deposition testified that he had attended two years of college and that he had achieved experience and success in the construction business. He described a number of contracts which he had entered into with nationally-known companies. Thus, there is no indication that Junkins was a neophyte in the business world.

In his affidavit Junkins says:

About two or three weeks thereafter [the first meeting], it must have been a day or so before February 24, 1981, [the day the order for the building was signed] Darryl Dunbar and Kent Smith again came to my office. We again discussed the dealership. It was at that time that Darryl Dunbar told me that I was going to be their new dealer and that the paper work would just be a formality of being hand-carried through. He stated at that time that he had the authority to tell me whether or not I was a dealer.

Additionally, Junkins stated:

He [Dunbar] further stated to me that if, in addition, I would purchase one of their buildings then I would be awarded the dealership.

(R. 46)

■ Under these facts as presented, we agree with the district court that the affidavit constituted a sham. When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

■ Rule 56 of the Federal Rules of Civil Procedure permits a partial or final judgment to be entered without a jury trial if a party can establish that as to one or all of the issues in the case there is no genuine issue as to any material fact and "that the moving party is entitled to a judgment as a matter of law." The party adverse to the movant for summary judgment cannot rest on his pleadings to present an issue of fact since the 1963 enactment of subparagraph (e). This part of the Rule now mandates that a party moved against respond with affidavits, depositions, or otherwise, in order to reflect that there are material facts which must be presented to a ·jury for resolution. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970).

The question presented by this case is whether a party's affidavit can create an issue of fact when contrasted with the party's deposition. In *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980),[1] our predecessor court held that a genuine issue can exist by virtue of a party's affidavit, even if it conflicts with his deposition. There the court found that Bone's affidavit explained certain aspects of his deposition testimony and clarified certain ambiguities created by frequent shifts in the questioning of Bone about a promissory note and the employment contract. Finding that the affidavit was not inherently inconsistent with Bone's earlier testimony, the court found that there was no sham but instead that there was created a genuine issue of material fact. In writing the opinion, the court recognized that other circuits had affirmed grants of summary judgment when a party attempted to contradict his own prior testimony. Thus, in *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir.1969), the court affirmed the grant of a summary judgment notwithstanding the fact that the owner of the plaintiff corporation, Perrino, filed an affidavit which contradicted in part his deposition. Perrino was deposed for four days

and repeatedly asked to specify the basis of the fraud he alleged and at one point stated: "There is no way of me knowing exactly what their intention was at the time they said it, except that they promised certain things when everything else points to the fact that they did not intend to do what they said they were going to do." (*Ibid.* p. 577–78.) In his affidavit, Perrino attributes certain statements to witnesses Person and Kloby, representatives of Singer, which statements he had failed to disclose on his deposition. Finding that the district court could properly conclude that the statements made in the affidavit were less reliable than those in the deposition, the court found that there was no triable issue of fraud. Likewise, in *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975), the court affirmed a grant of summary judgment by the district court which had found that the party urging fraud had not created a genuine issue of material fact when he filed an affidavit which conflicted with his deposition.

There is no conflict in the *Perma Research* and *Radobenko* decisions and the Fifth Circuit opinion in *Kennett-Murray Corp., supra.* Each grant by a district court of a summary judgment rests upon the distinct issues and facts of that particular case. Here the plaintiff affirmatively stated on deposition that the representatives of A & S did not tell him that he had to buy their company's building in order to become a dealer. He signed a contract to purchase a building in February at the second meeting with the representatives. He had been planning to buy such a building. He did not sign the proposed dealership agreement until May. Contained in the agreement was a statement that approval of the party seeking the dealership by A & S's representative in the Houston office was a prerequisite to the contract becoming effective. A & S's representatives had told Junkins that there was a review board to screen applicants. There

---

**1.** The Eleventh Circuit, in an en banc decision, *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

were other people involved in the transaction from the beginning, namely Junkins' superintendent, Charles Hollis, the real estate agent, Stewart Sims, and Junkins' partner, Dale Parker. Additionally, Junkins employed attorney, Paul Lowery, to go over the contract papers before he signed them and sent them to Houston in May. Plaintiff did not take the deposition of Darryl Dunbar, the A & S representative who allegedly made the promises to Junkins. When Junkins talked to Dunbar in June, after having been turned down by A & S, Dunbar told him that he had been fired and that he did not know what happened but that previously the company had followed his recommendations about dealers. When one reviews all of these facts, the deposition, and the affidavit, one concludes that the district court was correct in determining that the affidavit was a sham and that the plaintiff did not create such a genuine issue of material fact as to require submission to a jury.

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

Because I believe that the district court's granting summary judgment in favor of the defendants required it to invade the province of the jury and resolve genuine issues of fact, I dissent. I disagree with the majority on two grounds. First, I believe that a conflict between the plaintiff's deposition testimony and affidavit does not preclude the existence of a genuine issue of fact, at least where there is a plausible explanation for the discrepancy. Second, even if such a conflict does provide grounds for an adverse summary judgment, I do not believe that Mr. Junkins's affidavit contradicted his prior deposition testimony.

A district court may enter a summary judgment only when the moving party has sustained its burden of demonstrating the absence of a genuine issue of material fact. The evidence must be viewed in the light most favorable to the nonmoving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983), and all doubt as to the

existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979). This case raises the question whether a genuine issue of material fact is created by an affidavit that apparently contradicts or conflicts with the nonmovant's earlier deposition testimony. Our predecessor court faced this same question in *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980). In that case, the plaintiff claimed that the defendant had made material misrepresentations about the content of an employment contract. The plaintiff's deposition testimony apparently contradicted itself on the question whether the defendant had made any statements at all about the contract. Subsequently, the plaintiff filed an affidavit that explained the apparent conflict and indicated that the defendant had uttered the alleged misrepresentations. The Court held that "a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition." *Id.* at 893. The Court pointed out that, although the discrepancy might create an issue of credibility, credibility questions are not appropriate for resolution on motion for summary judgment. *Id.* The majority relies on *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975), and *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir.1969), to support its conclusion that an affidavit that conflicts with an earlier deposition does not create a genuine issue of fact. The majority's claim that "[t]here is no conflict in the *Perma Research* and *Radobenko* decisions and the Fifth Circuit opinion in *Kennett-Murray Corp.*" reads *Kennett-Murray* much too narrowly. Although the *Kennett-Murray* Court expressly avoided outright rejection of the *Perma Research* and *Radobenko* holdings, it clearly launched this Court's precedent in a different direction. The Court stated:

> Certainly, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence.... In light of the jury's role

in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.

622 F.2d at 894. The *Kennett-Murray* Court distinguished *Perma Research* and *Radobenko* on the ground that in *Kennett-Murray* "the alleged inconsistency created by the affidavit existed within the deposition itself." *Id.* But the Court then stated that "[e]ven assuming that the deposition was unequivocal, Bone's affidavit served to create a genuine issue which would preclude summary judgment." *Id.* The Court held that where the affiant's explanation of a discrepancy is "at least plausible,". *id.*, the affidavit creates a genuine issue. The majority's holding is clearly in conflict with *Kennett-Murray* in that it permits a district court faced with the nonmovant's contradictory statements to supplant the jury's role by making a credibility determination adverse to the nonmovant.

Furthermore, even if the majority is correct in holding that a nonmovant's contradictory statements provide grounds for summary judgment, it reaches the wrong result because in this case there was no contradiction. Junkins's deposition statements were simply not logically inconsistent with his affidavit. The majority correctly indicates that in his deposition Junkins testified that "no one stated that he had to buy a building from A & S *as a condition, a term, or a prerequisite* to becoming a dealer." (emphasis supplied) The following is a recitation of Junkins's relevant deposition testimony:

Q: Did either of them ever tell you that you had to have one of their buildings as your office building in order to be their dealer?

A: They insisted that we go ahead and order the building; they didn't tell me I had to buy their building, but they insisted that we go ahead and order the building.

.   .   .   .   .

Q: Neither Darryl nor Kent ever told you that you were required to have an A & S building in order to be a dealer?

A: They didn't state specifically it was a requirement; they did mention that they had heard that I needed a building and so forth.

.   .   .   .   .

Q: But before you ordered the building no one had told you that you were required to order that building in order to be a dealer?

A: Nobody stated it was a requirement.

.   .   .   .   .

Q: Yes sir; before you purchased the building did anyone from A & S tell you that that was a term and condition of becoming a dealer?

A: They just insisted we order the building; they didn't state specifically it was a term of the Agreement, or anything.

In his affidavit, Junkins said that Dunbar told him that "if, in addition, I would purchase one of their buildings then I would be awarded the dealership," and "I would become a dealer if I were to order the building." The statements are not logically contradictory; indeed, they are quite consistent. Even though Junkins admits that the A & S dealers did not represent that purchase of an A & S building was a *prerequisite* to obtaining a dealership, Junkins claims that they did represent to him that if he *did* purchase a building he was, in effect, guaranteed a dealership. Only this second representation is material to Junkins's claim. Standing alone, a representation that purchase of a building is a *requirement* of dealership could not be fraudulent because it does not promise or represent that A & S would actually award the dealership. On the other hand, a statement that A & S would make Junkins a dealer if he bought one of their buildings might be the basis for a fraud or misrepresentation or breach of contract claim.

Junkins's affidavit creates a genuine issue of fact even under the majority's interpretation of *Kennett-Murray*. The majori-

ty appears to construe that case as prohibiting summary judgment where a subsequent affidavit explains any apparent conflict with the earlier deposition. Junkins's affidavit did just that:

> Mr. Cunningham's questions to me (in the deposition) were oftentimes phrased in such terms that the literal truth was misleading in the answer. There were several occasions when Mr. Cunningham asked me if I had told him everything there was concerning a particular aspect of my dealings with Kent Smith and Darryl Dunbar and I had to tell him that I was not sure but if he would ask specific questions, I would try my best to answer.

> When I answered the question that no one specifically told me I had to buy a building in order to become an A & S dealer, I was answering the question literally as it was put to me. I was not allowed to elaborate (sic) or to offer any testimony concerning what they specifically did say with regard to the purchase of the building as it related to becoming a dealer.

Finally, the majority appears to place some reliance on the fact that the A & S salesmen told Junkins that his dealership application had to be approved by someone in their home office. Junkins testified at his deposition that the salesmen assured him that such approval was a mere formality. Their claims were corroborated by A & S's Vice President for Marketing who, when contacted by Junkins about the progress of his dealership application, said that all such decisions were made by the local salesmen. Junkins's affidavit and deposition clearly created genuine issues of material fact, which should have been resolved by the jury. I would, therefore, reverse and remand.