William **ENGELLEITER**, Plaintiff,

v.

**BREVARD COUNTY SHERIFF'S DEPARTMENT**, Defendant.

No. 6:02–CV–386–ORL22JGG.

United States District Court,
M.D. Florida.
Orlando Division.

July 25, 2003.

Richard C. Singer, Esq., Singer & Johnston, LLC, Melbourne, FL, for Plaintiff.

Thomas W. Poulton, Esq., DeBevoise & Poulton, P.A., Winter Park, FL, for Defendant.

## ORDER

CONWAY, District Judge.

Upon the Court's review of this case, it is ORDERED as follows:

1. No objections thereto having been filed, Magistrate Judge James G. Glazebrook's Report and Recommendation (Doc. 42), entered on July 7, 2003, is APPROVED AND ADOPTED.

2. The Defendant's Motion for Summary Judgment (Doc. 30), filed April 1, 2003, is GRANTED.

3. Although the Defendant previously asserted a counterclaim, *see* Doc. 18, it is apparent from the parties' Final Pretrial Statement (Doc. 40) that the counterclaim has been abandoned.

4. The Clerk shall enter a final judgment providing that the Plaintiff, William Engelleiter, shall take nothing on his claims against the Defendant, Brevard County Sheriff's Department, and shall further provide that the Defendant shall recover its costs of action.

5. Any other pending motions are moot.

6. The Clerk shall close the case.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for oral argument on June 23, 2003 on the following motion:

> MOTION: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 30)
>
> FILED: April 1, 2003 [referred May 27, 2003]

1. Although Engelleiter's complaint and caption refers to the defendant as the "Brevard County Sheriff's *Department*," the Court will use the correct name, which appears to be the "Brevard County Sheriff's Office." *See* Affidavit of Sergeant James Dodson, Docket No. 29. Engelleiter's First Amended Complaint seeks § 1983 relief under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments

THEREON it is **RECOMMENDED** that the motion be **GRANTED**.

## I. THE ISSUES

Plaintiff William Engelleiter brought this civil rights action against the Brevard County Sheriff's Office pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.[1] First Amended Complaint, Docket No. 3 at 1; Joint Final Pretrial Statement ["PTS"], Docket No. 40 at 1, 4. Engelleiter claims that the Brevard County Sheriff's Office was deliberately indifferent to his serious medical condition—insulin-dependent diabetes—while he was incarcerated at the Brevard County Detention Center on May 24—25, 2000. PTS, Docket No. 40 at 2. Engelleiter contends that the Brevard County Sheriff's Office gave him only one shot of insulin during a period of approximately 48 hours even though Engelleiter said that he was an insulin-dependent diabetic, and that he required up to four shots of insulin per day to maintain his blood sugar at a safe level. PTS, Docket No. 40 at 2. As a result, Engelleiter contends that he was hospitalized for three days after being released. *Id.* The Brevard County Sheriff's Office contends that it responded reasonably to Engelleiter's diabetic condition, and that it did not have a policy or custom of being deliberately indifferent to the serious medical needs of inmates. *Id.*

The Brevard County Sheriff's Office claims that it is entitled to summary judgment on two grounds: 1.) the undisputed facts demonstrate, at most, medical negli-

[Docket No. 3 at 1]; his motion for summary judgment seeks relief only under the Eighth Amendment [Docket No. 37]; and Engelleiter limited his claim to the Due Process Clause of the Fourteenth Amendment at oral argument and in the Joint Pretrial Statement [Docket No. 40 at 1, 4] because he was a state pre-trial detainee.

gence, but not deliberate indifference to Engelleiter's diabetic condition; and 2.) the undisputed facts demonstrate that the Brevard County Sheriff's Office did not have a policy or custom of being deliberately indifferent to the serious medical conditions of inmates at the Brevard County Detention Center. Docket No. 30 at 2. In support of its motion for summary judgment, the Brevard County Sheriff's Office has submitted a memorandum of law, numerous affidavits, medical records, answers to interrogatories, and Engelleiter's deposition. Docket Nos. 29—34.

Engelleiter claims that a material issue of fact remains for trial as to whether the Brevard County Sheriff's Office was deliberately indifferent to his diabetic condition. Docket No. 37. Relying on his own deposition, Engelleiter denies that he received 24 units of insulin at approximately 7:30 p.m. on May 24, 2000,[2] and instead claims that he never received a single dose of insulin after an initial dose when he first arrived at the Brevard County Detention Center. Engelleiter's Memorandum, Docket No. 37 at 2, citing Engelleiter Deposition, Docket No. 31 at 80—81.

Regarding the second issue on which defendant seeks summary judgment, Engelleiter does not contest that the Brevard County Sheriff's Office adopted a written policy that every inmate receive quality medical care throughout his incarceration and never be denied needed medical care. Docket No. 37 at 9; Affidavit of Sergeant James Dodson at 2, Docket No. 29; Affidavit of Health Services Administrator Dorothy Smith at 2, Docket No. 29. Similarly, Engelleiter does not contest that the defendant's Medical Director ordered that, in the case of a diabetic such as Engelleiter, the inmate's blood sugar level be tested twice per day, and that insulin be adminis-

tered according to a sliding scale. Docket No. 37 at 9. Engelleiter does contend, however, that his own deposition testimony, in general, establishes that the Medical Director's orders were not followed as to him. Engelleiter also claims to have proved a policy or custom of deliberate indifference by showing that the Brevard County Sheriff's Office delegated to nurses the authority to comply with the physician's orders—i.e., the performance of blood testing and the administration of insulin—despite its written policy requiring adequate care. Docket No. 37 at 9—10.

For the reasons stated below, Engelleiter is mistaken. The undisputed facts demonstrate that the Brevard County Sheriff's Office did not have a policy or custom of being deliberately indifferent to the serious medical conditions of inmates at the Brevard County Detention Center. The Brevard County Sheriff's Office's motion for summary judgment should be **GRANTED**.

## II. THE LAW

### A. *Standard of Review on Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106

---

**2.** *See* Affidavit of Nurse Ellenora Demidovich at 1—2, Docket No. 29 Exhibit A (medical record).

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593—94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant, and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be

drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

**B.** *Material Submitted in Opposition to Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissi-

ble in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House,* 146 F.3d 832, 834 (11th Cir.1998), *citing Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett–Murray Corporation v. Bone,* 622 F.2d 887, 893 (5th Cir.1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and As-*

*sociates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984).

The Honorable Anne C. Conway entered a Case Management and Scheduling Order in this case on May 21, 2002. Docket No. 22. Judge Conway ordered the parties to file with any motion for summary judgment a concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Docket No. 22 at 5, ¶ (II)(H)(1). Each memorandum in opposition to a motion for summary judgment must include a concise statement of the material facts as to which the opposing party contends there exists a genuine issue for trial. *Id.* The parties must provide pinpoint citations to the pages and lines of record supporting each material fact. General references to a deposition are inadequate. *Id.* According to Judge Conway's order, material facts set forth in the statement required to be served by the moving party "will be deemed admitted for the purposes of the motion unless controverted by the opposing party's statement." *Id.*

### C. *Fourteenth Amendment Claim of Pretrial Detainee Alleging Deliberate Indifference to Serious Medical Need*

Engelleiter alleges that the Brevard County Sheriff's Office acted under color of state law to deprive him of a federal constitutional right in violation of 42 U.S.C. § 1983. It is settled that § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Albright v. Oliver,* 510 U.S. 266, 270, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII.

■ Engelleiter was a pretrial detainee. As such, the parties agree that his § 1983

claim sounds properly under the Due Process Clause of the Fourteenth Amendment. Docket No. 30 at 10, n. 5; PTS, Docket No. 40 at 1, 4. This Court nevertheless looks to the contours of Eighth Amendment deliberate indifference claims, and analyzes a Fourteenth Amendment deliberate indifference claim in an identical fashion. *Taylor v. Adams,* 221 F.3d 1254, 1257 n. 3 (11th Cir.2000); *Hamm v. De-Kalb County,* 774 F.2d 1567, 1573—74 (11th Cir.1985).

■ The Due Process Clause of the Fourteenth Amendment entitles anyone who is arrested and detained under state law to necessary medical care. It is well-settled that the deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976); accord, Eleventh Circuit Pattern Jury Instruction 2.4.2 (1999)(relating to Fourteenth Amendment Claim). Thus, a Brevard County Detention Center employee might violate Engelleiter's Fourteenth Amendment right if he or she were deliberately indifferent to Engelleiter's serious medical need.

■ However, not every claim by a prisoner of inadequate medical treatment states a Constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid Constitutional claim of medical mistreatment. *See* Eleventh Circuit Pattern Jury Instruction 2.4.2 (1999). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. 429 U.S. at 106, 97 S.Ct. 285. Rather, in order to prove a Constitutional violation, the plaintiff must show that the defendant acted with deliberate indifference to the serious medical needs of the prisoner. 429 U.S. at 104, 97 S.Ct. 285.

■ A "serious medical need" is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would easily recognize the necessity for prompt medical attention. *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (11th Cir.1994); accord, Eleventh Circuit Pattern Jury Instruction 2.4.2 (1999). The Eleventh Circuit has found that a variety of medical conditions satisfy this standard. *See, e.g., McElligott v. Foley,* 182 F.3d 1248, 1256—57 (11th Cir.1999)(failure to further diagnose and treat severe pain of deteriorating condition); *Brown v. Hughes,* 894 F.2d 1533 (11th Cir.1990) (a broken foot received in a fight that remained untreated for hours); *Powell v. Lennon,* 914 F.2d 1459 (11th Cir.1990) (forcing inmate to stay in a dormitory filled with friable asbestos constituted deliberate indifference to plaintiff's serious medical needs).

■ The "deliberate indifference to serious medical needs" standard has an objective and a subjective component. *Hill,* 40 F.3d at 1186. The objective component is "contextual and responsive to 'contemporary standards of decency.'" *Id.* (quoting *Hud on v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). To establish that a health care provider's acts constitute deliberate indifference to a serious medical need, treatment must be so grossly incompetent, inadequate, or excessive as to shock conscience or to be intolerable to fundamental fairness. *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). The subjective component requires knowledge of the need for medical care and intentional refusal to provide that care. *Hill,* 40 F.3d at 1186. For a defendant to be "deliberately indifferent," there must be evidence in the record of such subjec-

tive awareness of the medical need. *McElligott*, 182 F.3d at 1255.

■ Depending on the circumstances and the length of the delay, a delay in treatment can constitute deliberate indifference. 182 F.3d at 1255, citing *Harris v. Coweta County*, 21 F.3d 388, 394 (1994) (deliberate indifference could be inferred from unexplained delay in treating a known or obvious serous medical condition); *Brown*, 894 F.2d at 1538–39 (finding that delay of a few hours in treating an inmate's broken foot could constitute a violation of the Eighth Amendment). The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. *McElligott*, 182 F.3d at 1255. For example, delaying medical treatment for non-medical reasons, such as coercing payment, can show deliberate indifference sufficient to establish a constitutional violation. *Hill*, 40 F.3d at 1190 n. 26. An unexplained delay in medical treatment could constitute deliberate indifference. *Brown*, 894 F.2d at 1538–39.

■ However, a defendant must purposefully ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be established. *Id.* at 1191. An official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. *McElligott*, 182 F.3d at 1255, citing *Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1425 (11th Cir.1997).

■ Deliberate indifference may also be established where treatment is shown to be grossly inadequate or based on a decision to take an easier but less efficacious course. *McElligott*, 182 F.3d at 1255, citing *Steele v. Shah*, 87 F.3d 1266, 1269–70 (11th Cir.1996); *Waldrop v. Ev-*

*ans*, 871 F.2d 1030, 1035 (11th Cir.1989). When the need for treatment is obvious, medical care which is so cursory as to amount to no care at all may also amount to deliberate indifference. *McElligott*, 182 F.3d at 1255. However, matters for medical judgment, such as whether to order an X-ray or like measure, does not represent cruel and unusual punishment even if the action or lack thereof evinces medical malpractice. *Estelle*, 429 U.S. at 107, 97 S.Ct. at 293.

In sum, Engelleiter must prove deliberate and intentional conduct on the part of an employee or agent of the Brevard County Sheriff's Office resulting in a deprivation of his constitutional rights as follows:

*First:* That the Brevard County Sheriff's Office intentionally committed acts that violated Engelleiter's constitutional right to be free of deliberate indifference to a serious medical need;

*Second:* That in so doing, the Brevard County Sheriff's Office acted "under color" of the authority of state law; and

*Third:* That the acts of the Brevard County Sheriff's Office were the proximate or legal cause of Engelleiter's damages.

Eleventh Circuit Pattern Jury Instruction 2.4.2 (1999) (names of parties added). Action under color of state law is not contested. Docket No. 40 at 4.

### D. Respondeat Superior—a Policy or Custom of Deliberate Indifference

■ Ordinarily, a public agency such as the Brevard County Sheriff's Office is legally responsible for the acts of its employees carried out in the regular course of their job duties as employees. The doctrine of respondeat superior, however, does not apply in a case such as this where Engelleiter claims a violation of constitutional rights under 42 U.S.C. § 1983.

*See, e.g.,* Eleventh Circuit Pattern Jury Instruction 1.9.1 (1999).

Rather, a local government agency is liable for a civil rights violation "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish a policy or custom, the Plaintiff normally must show a persistent and widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991); *Church v. City of Huntsville,* 30 F.3d 1332 (11th Cir.1994); *followed,* Eleventh Circuit Pattern Jury Instruction 1.9.1 (1999).

The governmental entity is responsible only when an injury is inflicted through the execution of its policy or custom—a policy or custom made by those whose edicts or acts may fairly be said to represent official policy. *See, e.g.,* Eleventh Circuit Pattern Jury Instruction 1.9.1 (1999). Thus, a local government agency, such as the Brevard County Sheriff's Office, is entitled to summary judgment when the plaintiff cannot establish the existence of a policy or custom that was the moving force behind a constitutional violation—even assuming that the plaintiff can show that prison officials were "deliberately indifferent" to his serious medical need.

Under some circumstances, "policy or custom" may include a single action or decision, so long as it is directed by decision-makers who possess final authority to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480—81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); accord, *Mandel v. Doe,* 888 F.2d 783, 792

(11th Cir.1989). The United States Court of Appeals for the Eleventh Circuit as recognized that even the acts of low-level governmental employees can constitute policy or custom for purposes of § 1983 liability where policymaking authority has been delegated. *Mandel,* 888 F.2d at 791—94. In *Mandel,* an unsupervised physician's assistant (who claimed to be a doctor) denied an inmate's repeated requests for x-rays and physician visits over a two-month period, and callously treated the inmate's fractured hip with Motrin and bed rest. 888 F.2d at 785—90. The Court affirmed a directed verdict in favor of the inmate because it was demonstrated that, in practice, full unsupervised authority for management of the prisoner's medical care had been delegated to the physician's assistant contrary to a formal policy requiring supervision of the physician's assistant by a medical doctor. 888 F.2d at 790—91.

A municipal official does not have final policy making authority over a matter, however, when that official's decisions *are* subject to meaningful administrative review. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). As summarized by the Eleventh Circuit:

> [T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policy-making authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review.

*Mandel,* 888 F.2d at 792 (following *Praprotnik* ); *see also, Scala v. City of Winter Park,* 116 F.3d 1396, 1399—1400 (11th Cir. 1997); *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 638 (11th Cir.1991).

## III. APPLICATION

The Brevard County Sheriff's Office has filed numerous affidavits and medical rec-

ords in support of its motion for summary judgment, with pinpoint citations to the record. Docket Nos. 29—34. To defeat summary judgment, Engelleiter relies solely on his own complaint and deposition, giving only one pin-point citation to his deposition on a contested matter central to summary judgment. Docket No. 37 at 2. Material facts set forth in the Brevard County Sheriff's Office's statement and supporting affidavits are deemed admitted for the purposes of the motion, except where controverted by Engelleiter's brief and deposition. *See* Fed.R.Civ.P. 56(e); Docket No. 22 at 5, ¶ (II)(H)(1). This Court draws all inferences from the evidence submitted in the light most favorable to Engelleiter, the non-movant, and resolves all reasonable doubts in Engelleiter's favor.

### A. The Facts

On May 23, 2000, Engelleiter was involved in a car accident in the City of Palm Bay, Florida. *See* Docket No. 31, Deposition of Plaintiff at 62. Engelleiter's blood sugar level was tested at the scene of the accident, and the result was 33. Docket No. 30, Exhibit 24, Medical Records from Palm Bay Community Hospital—Emergency Room Record by John Patrick Griffin, M.D.; *see also* Docket No. 31 at 65. Palm Bay Community Hospital admitted Engelleiter at 6:29 p.m. Docket No. 30, Ex. 24; Docket No. 31 at 66. Engelleiter's blood sugar level was tested in the emergency room, and the result was 173. Docket No. 30, Ex. 24. At the emergency room, Dr. Renato Durham diagnosed Engelleiter as having had a hypoglycemic episode, and discharged him at 10:20 p.m. Docket No. 30, Ex. 24.

However, the Palm Bay Police Department took Engelleiter into custody at the hospital because there were several outstanding arrest warrants for Engelleiter. *See* Docket No. 30, Ex. 24; see Docket No. 31 at 66—67. On May 24, 2000, at approx-

imately 12:10 a.m., the Palm Bay Police Department transported Engelleiter to the Brevard County Sheriff's Office's booking facility in Viera, Florida. Affidavit of Corporal Robert Lough at 1, Docket No. 29; *see also* Docket No. 31 at 67. Engelleiter was fingerprinted and changed into a jail uniform. Affidavit of Corporal Robert Lough at 2, Docket No. 29. While at the booking facility, Brevard County Deputy Sheriff Steven Gjermo served Engelleiter with several arrest warrants. Affidavit of Corporal Robert Lough at 2, Docket No. 29. The Sheriff's Office transported Engelleiter from the booking facility to the Brevard County Detention Center. *Id.;* Affidavit of Corrections Officer Edward Ostrom at 2, Docket No. 29.

At approximately 1:45 a.m., Engelleiter arrived at the Brevard County Detention Center. He was placed in holding cell 704 in the booking room. Affidavit of Corrections Officer Edward Ostrom at 2, Docket No. 29; Deposition of Engelleiter at 69, Docket No. 31. A booking photograph was taken of Engelleiter. *Id.*

At approximately 1:50 a.m., Steven Savage screened Engelleiter. Affidavit of Registered Nurse Betty Cascella at 1, Docket No. 29; Deposition of Engelleiter at 70—73, Docket No. 31. Engelleiter stated that he was a diabetic and was taking regular and NPH insulin. Docket No. 30, Ex. 20, Receiving Screening Form dated May 24, 2000 at 2. Engelleiter also stated that he was taking the medication Dilantin for a seizure disorder. *Id.* Savage completed a Special Security Request form requesting that Engelleiter be assigned to Pod 200, and be given a lower level, lower bunk and a roommate. Docket No. 30, Ex. 21, Special Security Request Form dated May 24, 2000.

After Savage screened Engelleiter, Registered Nurse Betty Cascella tested his blood sugar and the result was 353. Affi-

davit of Registered Nurse Betty Cascella at 1, Docket No. 29. Pursuant to the sliding scale, Nurse Cascella administered 18 units of insulin to Engelleiter.[3] *Id.* Nurse Cascella recorded the results of the blood sugar test and the administration of insulin on the last page of the screening form completed by Savage. *Id.; see also* Docket No. 30, Ex. 20 at 3.

At approximately 3:00 a.m., Nurse Cascella spoke with Dr. Elizabeth Galfo, the Medical Director for the Detention Center, who ordered that Engelleiter's blood sugar be tested twice a day and administered insulin on a sliding scale. Affidavit of Registered Nurse Betty Cascella at 2, Docket No. 29. Dr. Galfo also ordered that Engelleiter be placed on a 2000 calorie diabetic diet. *Id.* Nurse Cascella completed a Physician's Order documenting Dr. Galfo's instructions and a Diet Order Form specifying that Engelleiter was to receive a 2000 calorie diabetic diet. *Id.*

At approximately 4:20 a.m. that morning, Engelleiter was moved from holding cell 704 to Pod 200, which is a housing unit. Affidavit of Corrections Officer Edward Ostrom at 2, Docket No. 29. Engelleiter was placed in cell 9201, which is the day room of Alpha cellblock of Pod 200. Affidavit of Corrections Officer Tawnya Pack at 2, Docket No. 29; Deposition of Engelleiter, Docket No. 31. at 74. Alpha cellblock was reserved for males with medical problems. Affidavit of Corrections Officer Tawnya Pack at 2, Docket No. 29. Alpha cellblock contained individual cells and a common area called the "day room." *Id.* The day room had an intercom system, which allowed inmates to communicate with the control room for Pod 200. *Id.; see also* Docket No. 31 at 95.

Engelleiter's next testing and administration of insulin is disputed. The Sher-

iff's Department claims that at approximately 7:30 p.m. on May 24, Registered Nurse Ellenora Demidovich tested Engelleiter's blood sugar, and the result was 541. Affidavit of Registered Nurse Ellenora Demidovich at 1, Docket No. 29. The Sheriff's Department further claims that Nurse Demidovich contacted Dr. Galfo, who instructed her to administer 24 units of insulin to Engelleiter, which she then did. Affidavit of Registered Nurse Ellenora Demidovich at 1—2, Docket No. 29. Nurse Demidovich completed a Physician's Order documenting Dr. Galfo's instructions. *Id.*

In contrast, Engelleiter claims that his blood sugar was tested at "around 11:00 o'clock, noon"—not 7:30 p.m. He further claims that the result was "almost 600." Deposition of Engelleiter, Docket No. 31 at 80. Engelleiter further claims that he was not given any insulin in response to his blood test level. *Id.* at 81. The Court must view the evidence in the light most favorable to Engelleiter for summary judgment purposes.

At some time on May 24, Bail Bondsman Robin Robbins met with Engelleiter in person at the Detention Center in order to execute several appearance bonds. Affidavit of Bail Bondsman Robin Robbins at 1, Docket No. 29. At no time during his meeting with Engelleiter did Robbins see him in physical distress or hear him say that he was in physical distress. *Id.*

At approximately 5:00 a.m. on May 25, Licensed Practical Nurse Sandra Larson swears that she tested Engelleiter's blood sugar, and the result was 172. Affidavit of Licensed Practical Nurse Sandra Larson at 2, Docket No. 29. Pursuant to the sliding scale, Nurse Larson did not administer any insulin to Engelleiter. *Id.* She

---

**3.** Although Engelleiter testified that it was Savage who tested his blood sugar, he admitted that his blood sugar was tested and that

he was given insulin. Docket No. 31 at 92—93. Engelleiter did not remember the result of the blood sugar test. Docket No. 31 at 93.

recorded the results of the blood sugar test on Engelleiter's medication administration record. *Id.* At no time during her contact with Engelleiter did Nurse Larson see him exhibit any symptoms of hypoglycemia or hyperglycemia or otherwise appear in physical distress from his diabetic condition or hear him state that he was in physical distress from his diabetic condition. *Id.* Engelleiter denies that he was tested at approximately 5:00 on May 25, and the Court must view the evidence in the light most favorable to Engelleiter for summary judgment purposes.

At approximately 4:15 p.m. on May 25, Physician's Assistant Beverly Wood went to Pod 200 to talk to Engelleiter about his insulin and a treatment plan for his diabetes. Affidavit of Physician's Assistant Beverly Wood at 2, Docket No. 29. However, Engelleiter had already been moved from Pod 200 to be released. *Id.* She completed a progress note in Engelleiter's chart concerning her attempt to talk to him. *Id.*

At approximately 4:50 p.m. on May 25, Engelleiter was released from the Brevard County Detention Center. Affidavit of Mary Wendling at 1, Docket No. 29; *see also* Docket No. 31 at 96. Any money and personal items that Engelleiter had with him when he was received at the Detention Center, including prescription medicines, were returned to him along with a property receipt for the money and personal items. Affidavit of Mary Wendling at 1–2, Docket No. 29.

At approximately 10:44 p.m. on May 25, Brevard County Fire Rescue ["BCFR"] received an emergency call concerning Engelleiter. Affidavit of Paramedic John P. Morahan—Exhibit A, Docket No. 29; *see also* Docket No. 31 at 101. BCFR contacted Engelleiter, who stated that he was an insulin-dependent diabetic, and had not been able take any insulin since 6:00 p.m. Affidavit of Paramedic John P. Morahan—

Exhibit A, Docket No. 29. Engelleiter's blood sugar was tested and the result was greater than 400. *Id.* BCFR transported Engelleiter to Holmes Regional Medical Center, and he arrived there at 11:16 p.m. *Id.*

Engelleiter was admitted at the Holmes Regional Medical Center for severe hyperglycemia resulting in real failure, nausea and vomiting. His blood sugar was tested, and the result was greater than 700. *See* Docket No. 30, Ex. 23, Medical Records from Homes Regional Medical Center dated May 26, 2000. Engelleiter remained hospitalized until May 28, 2000.

It was the policy of both the Brevard County Detention Center and EMSA Correctional Care (the medical provider for the Detention Center), that every inmate receive quality medical care throughout his incarceration, and never be denied needed care. Affidavit of Health Services Administrator Dorothy Smith at 2, Docket No. 29; Affidavit of Sergeant James Dodson at 2, Docket No. 29. In order to effectuate this policy, both the Detention Center and EMSA had written directives pertaining to the delivery of health care services to inmates at the Detention Center. *Id.*

Final medical judgments regarding an inmate's health care needs rested with the Medical Director (sometimes also referred to as the responsible physician), who was Dr. Elizabeth Galfo. Affidavit of Health Services Administrator Dorothy Smith at 2, Docket No. 29; Affidavit of Sergeant James Dodson at 2, Docket No. 29. Pursuant to written policy, every inmate booked into the Detention Center was given a "receiving screening," and within 14 days also received a "health assessment"— a more comprehensive assessment of the inmate's health by a member of the medical staff. Affidavit of Health Services Administrator Dorothy Smith at 2, Docket No. 29; Affidavit of Sergeant James Dod-

son at 2, Docket No. 29. All receiving screenings and health assessments are documented on the corresponding form. Affidavit of Health Services Administrator Dorothy Smith at 3, Docket No. 29. Also pursuant to written policy, every inmate received at the Detention Center is informed of how to access health services. Affidavit of Health Services Administrator Dorothy Smith at 3, Docket No. 29. In this regard, inmates can request medical assistance by completing an Inmate Medical Request Form. *Id.*

Dr. Galfo instituted a protocol for diabetes, which specified that insulin-dependent diabetic inmates were to have an "accu-check BID × 5 days" (have their blood sugar tested twice a day). Affidavit of Health Services Administrator Dorothy Smith at 3, Docket No. 29. Dr. Galfo also instituted the use of a sliding scale to determine how much insulin to give a diabetic inmate depending on the result of his blood sugar test. *Id.,* Exhibit I, J. The sliding scale called for the administration of insulin according to blood sugar levels as follows:

Sliding Scale Bid Regular Insulin S.Q.

| | |
|---|---|
| 200—250 | 6 U |
| 251—300 | 10 U |
| 301—350 | 14 U |
| 351—400 | 18 U |
| >400—CALL M.D. | |

*Id.,* Exhibit J. Also, it was a standard procedure to place diabetic inmates on a therapeutic diet in order to regulate their caloric intake, which would help maintain their blood sugar level. *Id.*

## B. *Analysis as to Deliberate Indifference to Serious Medical Need*

In support if its version of the facts, the Brevard County Sheriff's Office has provided the affidavits of an endocrinologist, a physician's assistant, nurses, a health administrator, a paramedic, deputy sheriffs, and others, as well as the relevant medical and Detention Center records. They are internally consistent. Engelleiter alone contends that, after his initial blood test and insulin dose on admission, he was never again tested or given insulin at the Brevard County Detention Center.

Although it seems rather evident what decision most jurors would make at trial based on the largely one-sided evidence, on summary judgment this Court may not weigh the credibility of the parties. Determination of the issue of deliberate indifference rests on which competing version of the facts or events is true. The parties dispute 1.) the extent to which Engelleiter informed an agent of the Brevard County Sheriff's Office of the nature and degree of his diabetic condition; 2.) whether any agent of the defendant had subjective knowledge of a risk of serious harm to Engelleiter as a result of the alleged delay in providing sufficient insulin; and 3.) the extent of defendant's response to Engelleiter's diabetic condition. Because Engelleiter's testimony creates a material issue of fact as to deliberate indifference, the issue would be presented to the trier of fact if the Brevard County Sheriff's Office were not entitled to summary judgment on the second issue relating to policy or custom.

## C. *Analysis as to Custom or Policy*

The Brevard County Sheriff's Office is subject to liability under *Monell* for violating Engelleiter's civil rights only if Engelleiter is injured by the execution of a governmental "policy or custom" by someone whose edicts or acts may fairly be said to represent official Brevard County Sheriff's Office policy. Engelleiter testified about facts regarding the treatment of a single patient (himself) on May 24—25, 2000. Engelleiter has shown no persistent and widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law.

Engelleiter has not proved a "policy or custom" based on treatment decisions by the Brevard County Sheriff's Office or the nurses at the Detention Center. Nothing in the record shows that Brevard County has made its nurses into "policy-makers" who possess final authority to establish municipal policy for the Brevard County Sheriff's Office with respect to the care of pretrial detainees. Indeed, Engelleiter has not proved that *policymaking authority* has been delegated to any nurse. A doctor's delegation of authority to a nurse to exercise nursing discretion is hardly sufficient to give the nurse *policy-making* authority. Indeed, it would be a severe stretch of the term "policy or custom" to find that each nurse establishes a "policy or custom" for the Brevard County Sheriff's Office every time she administers insulin to a detainee.

Doctors are medical professionals, trained to evaluate how many units of what formulation of insulin to administer to a person of Engelleiter's age, sex, race, weight, diet, activity level, and medical condition (seizure disorder) given every possible blood sugar level. The responsible physician at the Brevard County Detention Center delegated such routine nursing tasks—the testing of blood sugar and the administration of insulin according to a sliding scale of dosages prescribed by the doctor—to nurses who acted at all times under the authority and direction of a physician. Doctors and nurses use a sliding scale as a medical table or tool in order to give appropriate care to diabetics pending titration or fine-tuning of an individual's optimal insulin dose.[4] Indeed,

such tasks are routinely performed by lay diabetics themselves.

The delegation of nursing care to nurses is very different from asking nurses to establish public policy for a Sheriff's Office. The delegation of policymaking authority described in *Monell* requires delegation such that the subordinate's discretionary decisions are not constrained by official policies, and are not subject to review. Engelleiter has not proved that the nurses at the Brevard County Detention Center were free to ignore the official policies of the Brevard County Sheriff's Office, and were free from review or supervision by the responsible doctor. Engelleiter has submitted absolutely no medical opinion or proof that such a delegation of routine nursing tasks is in any way contrary to the express policy of the Brevard County Sheriff's Office that every inmate receive quality medical care throughout his incarceration and never be denied needed medical care.

## IV. CONCLUSION

The Brevard County Sheriff's Office is entitled to summary judgment because Engelleiter has not established the existence of a policy or custom that was the moving force behind a constitutional violation. Rather, the undisputed facts demonstrate that the Brevard County Sheriff's Office did not have a policy or custom of being deliberately indifferent to the serious medical conditions of inmates at the Brevard County Detention Center. Even assuming that Engelleiter could show that

---

4. It makes little sense to elevate the sliding scale to the level of a municipal "policy or custom." It is unlikely that the Brevard County Sheriff's Office has a "policy or custom" that is so complex as to cover every possible sugar level in every possible detainee under every possible medical circumstance (to say nothing of every other illness that

might befall a detainee). The complexities of diabetes treatment are carefully described in the Affidavit of Marvin C. Mendel, M.D., a board-certified endocrinologist and internist with impressive credentials. Docket Nos. 29 and 34 at 3. Dr. Mendel also explains the use and propriety of the sliding scale. *Id.* at 4.

prison officials were deliberately indifferent to his own serious medical need on May 24—25, 2000, the Brevard County Sheriff's Office is nevertheless entitled to summary judgment.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

July 6, 2003.